29 F.3d 632
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marcos HARRIS, Petitioner-Appellant,
v.
Samuel A. LEWIS, Superintendent; Attorney General of the
State of Arizona, Respondents-Appellees.
 No. 93-16301.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 13, 1994.*
Decided June 16, 1994.
 
 Before: GOODWIN, POOLE, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Marcos Harris, an Arizona state prisoner serving a forty-eight-year sentence for manslaughter, kidnapping, aggravated assault, and theft, appeals pro se the district court's denial of his petition for habeas corpus. The district court found that all of his claims were procedurally barred. We review his claims de novo, Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1818 (1993), and AFFIRM.
 
 I. PROCEDURAL BAR
 
 3
 The state contends that all of Harris's claims are procedurally barred because Harris failed to comply with various state procedural rules. State courts rejected most of Harris's claims without specifying whether the rejection was based on these alleged procedural defaults or on the merits of the claims. Because sorting through this procedural quagmire is not an economical use of time, given Harris's pro se status, we assume that Harris has stated at least claim that is not barred, and address Harris's claims on their merits.
 
 II. SPEEDY TRIAL CLAIMS--STATE AND FEDERAL
 
 4
 Harris first argues that the delay between his arraignment and trial violated his state and federal constitutional right to a speedy trial. The district court properly dismissed his state claim for lack of a federal question. Estelle v. McGuire, 502 U.S. ----, 112 S.Ct. 475, 480 (1990); Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir.1991).
 
 
 5
 To determine if an accused's Sixth Amendment right to a speedy trial has been violated, we look to (1) the length of the delay; (2) the reason for the delay; (3) assertion of the right by the defendant; (4) prejudice to the defendant. United States v. Williams, 782 F.2d 1462, 1465 (9th Cir.1985). However, unless the delay is presumptively prejudicial, we need not inquire into the other factors. Barker v. Wingo, 407 U.S. 514, 530 (1972); United States v. Lewis, 759 F.2d 1316, 1350 n. 16 (9th Cir.), cert. denied by Milburn v. U.S., 474 U.S. 994 (1985). Harris was arraigned on September 7, 1982; trial began April 12, 1983, some seven months later. A delay of this length is not presumptively prejudicial for Sixth Amendment purposes. Lewis, 759 F.2d at 1350 n. 16. Thus, Harris's speedy trial claim does not entitle him to federal habeas relief, whether or not it is procedurally barred.
 
 
 6
 III. ADMISSION OF EVIDENCE ABOUT THE VICTIMS' SEXUAL
 
 ORIENTATION
 
 7
 Harris next objects to the exclusion of various testimony about Smith and Hamilton's sexual orientation. Harris claims that the exclusion of this testimony violated both Arizona evidentiary rules and his Sixth Amendment right to call and cross-examine witnesses.
 
 
 8
 The claims based on state evidentiary rules, again, do not present a federal question. This court may grant relief only if Harris's trial violated federal constitutional rights. Estelle v. McGuire, 502 U.S. ----, 112 S.Ct. 475, 480 (1990); Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir.1991).
 
 
 9
 Harris has not shown that the exclusion of this marginally relevant testimony violated his federal constitutional rights. While the "exclusion of significant defense evidence implicates constitutional values," Perry v. Rushen, 713 F.2d 1447, 1452-53 (9th Cir.1983), cert. denied, 469 U.S. 838 (1984); Chambers v. Mississippi, 410 U.S. 284, (1973); Washington v. Texas, 388 U.S. 14 (1967), a "defendant [asserting such a claim] must show that his interest clearly outweighs the state's before [this court] will interfere with routine procedural matters." Perry, 713 F.2d at 1453. "Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process." Id. at 1453; see also Taylor v. Illinois, 484 U.S. 400 (1987).
 
 
 10
 In Harris's case, the excluded witnesses would have testified that (1) Fred Smith, the kidnapping victim, was gay; (2) that Smith had a habit of picking up young men who were looking for work and making sexual overtures to them; and (3) that in making such overtures, he had previously made statements similar to those Harris described to the effect of "I always get what I want." One witness would have testified that he had a 16-year relationship with Smith; two others would have testified that they worked on Smith's ranch and left after the victim made sexual overtures to them. None would have testified that Smith became violent when they rejected his advances or that he raped them or used any physical force against them.
 
 
 11
 The state did not dispute Smith's sexual orientation or Harris's story that Smith made sexual overtures toward him. Thus, these witnesses would not have helped Harris's self-defense claim (1) because Smith's sexual orientation is irrelevant to the question of his propensity towards violence; and (2) because even if Smith had been violent, such behavior would not have justified stuffing him into the trunk of his car and driving him to New Mexico.
 
 
 12
 The evidence that the manslaughter victim, Donald Hamilton, was gay is even less relevant. Harris alleged that Hamilton was killed in self-defense because Harris's codefendant killed Hamilton while Hamilton and Harris were struggling over a gun. Whatever Hamilton's autopsy may have proved about Hamilton's sexual practices had no relevance to this self-defense claim.
 
 
 13
 Harris's Confrontation Clause claims are without merit.
 
 IV. SENTENCING
 
 14
 Harris next claims that the state court erred in imposing consecutive sentences. He argues that Arizona law does not allow consecutive sentences in "crime spree" situations, in which a defendant commits several related offenses in a single incident. Once, again, this court does not grant habeas relief for alleged misapplications of state law, unless the misapplication constitutes a due process violation. Estelle v. McGuire, 502 U.S. ----, 112 S.Ct. 475, 480 (1990); Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir.1991).
 
 
 15
 Even reading Harris's petition liberally as alleging that his due process rights were violated by an alleged misapplication of state law, his claim is without merit. Harris contends that, at the time he was sentenced, Arizona law did not permit a court to impose consecutive sentences for offenses arising from a single "crime spree." He is incorrect.
 
 
 16
 Harris relies on two Arizona cases, State v. Perkins, 699 P.2d 364 (Ariz.1985) and State v. Mulalley, 618 P.2d 586 (Ariz.1980). However, while Perkins did hold that Ariz. 13-604(H) barred consecutive sentences for offenses arising from a single crime spree, it was not decided until after Harris's crimes and sentencing, and has since been explicitly overruled by State v. Noble, 731 P.2d 1228 (Ariz.1987) ("We expressly overrule Mulalley and Perkins to the extent that they suggest Sec. 13-604(H) in any way limits a judges' ability to impose consecutive sentences.... [a rule requiring] trial judges to impose only concurrent sentences for crimes committed on the same occasion creates anomalous sentencing results.").
 
 
 17
 Whether Harris's consecutive sentence violates state law, then, depends on the state of the law in 1982 and 1983 when Harris committed his crimes and was sentenced. Harris argues that Mulalley, decided in 1980, held that A.R.S. Sec. 13-604(H) barred consecutive sentences for several offenses that were part of the same crime spree. The Arizona Court of Appeals, however, found that any such statement in Mulalley was non-binding dicta at best. See Ex.N ("did not deal directly with and only analogized to what the court believed, at that time, was the legislative intent behind Sec. 13-604(H) with regard to spree offenses; the language relied upon petitioner was dicta.")[1]
 
 
 18
 Other cases decided shortly before Harris's crimes and sentence unambiguously held that consecutive sentences could be imposed for multiple offenses occurring in a single "crime spree," as long as the different offenses did not have "identical elements." See State v. Rumsey, 636 P.2d 1209 (Ariz.1981) (subsequent history omitted); State v. Girdler, 675 P.2d 1301 (Ariz.1983) (upholding consecutive sentences for arson and felony murder arising out of the same incident), cert. denied, 467 U.S. 1244 (1984); State v. Sanchez, 635 P.2d 1217, 1223-24 (Ariz.Ct.App.1981) (rejecting a similar argument that A.R.S. Sec. 13-604(H) and Mulalley bar consecutive sentences for offenses committed on the same occasion and upholding consecutive sentences for offenses involving two different victims); State v. Nelson, 639 P.2d 340, 342-43 (Ariz.Ct.App.1981) (rejecting appellant's argument that Mulalley prohibits consecutive sentences for offenses committed on the same occasion).
 
 
 19
 As the Arizona Court of Appeals found, Harris' sentence is proper under the "identical elements test." Harris received a consecutive sentence for manslaughter of Hamilton and a variety of offenses including kidnapping of Smith. These crimes have different elements and involve different victims. Cf. Sanchez, 635 P.2d at 1223-24. Thus, Harris's consecutive sentence violates neither Arizona state law nor the double jeopardy clause.
 
 
 20
 If Harris is arguing that a forty-eight-year sentence is simply disproportionate to his offense, this argument is foreclosed by recent cases limiting the scope of Eighth Amendment proportionality review in non-death penalty cases. See, e.g., Harmelin v. Michigan, 501 U.S. 957 (1991); United States v. Bland, 961 F.2d 123, 129 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992) (no Eighth Amendment violation unless a "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.").
 
 
 21
 Thus, whether Harris' federal sentencing claim is based on an alleged misapplication of state law or is simply a claim that his sentence is disproportionate to his offense, it is without merit.
 
 
 22
 V. INEFFECTIVE ASSISTANCE OF COUNSEL--TRIAL, APPEAL, AND
 
 POST-CONVICTION
 
 23
 Harris also claims that he received ineffective assistance of counsel at trial, on appeal and in post-conviction proceedings. However, Harris argues that his trial counsel was ineffective because the "court-appointed attorney failed to submit critical facts of the case to the Arizona Supreme Court on appeal [and] trial and appeals lawyer are the same lawyer." Blue at 7. Thus, even liberally construing his pro se petition, he does not allege that his trial counsel was ineffective during his trial, only that the same lawyer was ineffective on appeal.
 
 
 24
 As Harris complains, appellate counsel inexplicably omitted many of Harris's claims from his petition to the Arizona Supreme court, thus producing many of the procedural bar problems Harris now faces. However, Harris has not shown that any of these omitted claims would have entitled him to relief, thus, he has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984) Thus, Harris has not shown that appellate counsel's efforts were constitutionally ineffective for federal habeas purposes.
 
 
 25
 Finally, Harris's claim that post-conviction counsel was ineffective does not state any grounds for relief, as there is no constitutional right to counsel in state post-conviction proceedings and there can be no deprivation of effective assistance where there is no constitutional right to counsel. Coleman, 111 S.Ct. at 2566 (citing Murray v. Giarratano, 492 U.S. 1 (1989); Pennsylvania v. Finley, 481 U.S. 551 (1987); Wainwright v. Torna, 455 U.S. 586 (1982)).
 
 
 26
 VI. FAILURE TO INSTRUCT ON DEFENSE OF JUSTIFICATION
 
 
 27
 Harris also argues that the district court erred in failing to instruct the jury on the defense of justification. The record does not support this claim. The district court instructed the jury that:
 
 
 28
 Justification is a complete defense to the crimes of murder, manslaughter, and aggravated assault. If you find that the defendant's conduct was justified, you must find him not guilty of second degree murder, manslaughter and aggravated assault....
 
 
 29
 TR Vol. IV. 53-55. The trial court also instructed the jury on provocation. TR Vol. IV at 52. Harris has not shown that the state court's jury instructions were constitutionally inadequate.
 
 VII. EVIDENTIARY HEARING
 
 30
 Harris also argues that the district court erred in refusing to hold an evidentiary hearing. However, "[a] federal habeas petitioner is entitled to an evidentiary hearing [only] if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court." Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991). Harris's petition does not present any such facts; thus, the district court did not abuse its discretion in failing to hold such a hearing. Id. at 1412.
 
 
 31
 VIII. THE DISTRICT COURT'S ALLEGED FAILURE TO NOTIFY HARRIS
 
 OF THE DEFICIENCIES IN HIS PETITION
 
 32
 Finally, Harris contends that the district court erred in dismissing his petition without notifying him of its deficiencies and providing him an opportunity to correct these problems. No evidence supports this claim. Harris filed a response to the Government's answer, and, after the Magistrate Judge recommended dismissing Harris's petition for procedural defaults, the district court allowed Harris to file objections to the Magistrate Judge's Report. Harris did in fact file such objections. ER 21. No evidence suggests that Harris was denied an opportunity to respond to Arizona's contention that his claims were procedurally barred or that an additional opportunity to amend the substance of his complaints would have changed the outcome of his petition.
 
 
 33
 The district court judgment denying Harris's petition for habeas relief is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Mulalley held that the district court erred in concluding that state law required it to impose consecutive life sentences. The court admitted that A.R.S. Sec. 13-604(H) (which deals with enhancing sentences based on prior convictions) was "not strictly on point," the Court stated that it believed A.R.S. Sec. 13-604(H) "indicates the intention of the legislature that 'spree offenders' are to be treated differently." Id. at 591